## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

FELIPE OROPEZA-HIGAREDA,

     Petitioner,

     v.                         Case No. 2:26-cv-02285-BCL-atc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

     Respondent.

## ORDER DENYING TEMPORARY RESTRAINING ORDER AND § 2241 PETITION

Petitioner Felipe Oropeza-Higareda has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without a bond hearing and without commencement of removal proceedings. Doc. 1 at 3. Contemporaneously, Petitioner filed a Motion for Preliminary Injunction and Temporary Restraining Order. Doc. 2 at 1. Respondents timely filed a Response opposing both the Petition and Petitioner's Motion. Doc. 18. Petitioner replied to that Response on March 23, 2026. Doc. 19.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket

1

to replace Scott Ladwig with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED.**

As to the merits of the Petition for habeas corpus and Petitioner's Motion for a temporary restraining order or preliminary injunctive relief, the Petition (Doc. 1) and Motion (Doc. 2) are **DENIED** for the reasons that follow.

## BACKGROUND

Petitioner, noncitizen Felipe de Jesus Oropeza-Higareda, is a citizen of Mexico who entered the United States in 1998. Doc. 1 at 9–10; Doc. 2 at 4. After receiving a traffic citation on February 26, 2026, at a Department of Transportation checkpoint, Petitioner was held on an immigration detainer at the West Tennessee Detention Facility in this District. Doc. 2 at 6. At the time he filed for a writ of habeas corpus and temporary restraining order, Petitioner alleges ICE had not begun removal proceedings against him by filing a Notice to Appear. *Id.* He alleges that he has not received a bond hearing to which he claims to be entitled by law. *Id.* at 9. Petitioner seeks his release or an individualized bond hearing under 8 U.S.C. § 1226(a). *Id.* at 17.

After Petitioner filed his Petition and Motion, the Department of Homeland Security submitted its response, to which it appended a Notice to Appear charging Petitioner with removal under Section 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. Doc. 18-1. The Notice to Appear set Petitioner's hearing on removability for March 27, 2026. *Id.* at 1. The document states that it was served on Petitioner on February 28, 2026, and that Petitioner refused to sign the document. *Id.* at 2. Petitioner acknowledges that the Notice to Appear has now been filed. Doc. 18 at 5 n.3; Doc. 19 at 18–19.

2

**LEGAL STANDARD**

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Temporary restraining orders and preliminary injunctions are "extraordinary equitable remed[ies] that [are] never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain such relief, the movant must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20). "Thus, '[t]he party seeking a preliminary injunction bears the burden of justifying such relief.'" *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land,* 684 F.3d 611, 615 (6th Cir. 2012)). "If the plaintiff fails to show a likelihood of success on the merits, the court may deny [the motion for a temporary restraining order] without any further consideration." *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)).

**ANALYSIS**

The Court denies both the Petition and the Motion because Petitioner's claims fail on their merits. Contrary to Respondents' argument, the exhaustion doctrine does not bar review of

Petitioner's claims. But Petitioner's detention without a bond hearing violates neither the Immigration and Nationality Act nor the Fifth Amendment's Due Process Clause.

## I.    Petitioner's Claims challenging application of 8 U.S.C. § 1225.

### A. The Exhaustion Doctrine does not preclude review of Petitioner's statutory claim.

Respondent argues that Petitioner's failure to pursue his claims through the Board of Immigration Appeals ("BIA") bars this Court from reviewing his petition. The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted). At least the first two of those justifications would support a robust, near-ironclad exhaustion

requirement, so that parties always must follow the agency's procedures and an agency always has an opportunity to distinguish or correct an earlier, potentially erroneous, decision or policy.

But that is not how the exhaustion doctrine has developed. As relevant here, the Supreme Court has held that exhaustion may not be required where the agency "has predetermined the issue before it." *McCarthy*, 503 U.S. at 148 (internal citations omitted). That exception is in some tension with the idea that exhaustion allows an agency to correct its own purported mistakes, insofar as it allows a party to deprive the agency of the opportunity to correct those purported mistakes if they are reflected in a "precedential" agency decision or binding policy. Such is the case here, where the relief Petitioner seeks is barred by the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. 216, 2025 WL 2674169 (BIA 2025). The Court agrees that exhaustion would be futile on this record because there is no indication that Respondents would depart from the reasoning of the *Yajure Hurtado* decision (acknowledging that the lack of exhaustion naturally precludes Respondent from providing that indication or at least makes it less likely Respondent will do so).

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

The parties agree that Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

5

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2). Petitioner argues that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a). Doc. 2 at 9. Respondents assert that Section 1225(b)(2) is applicable to Petitioner because he remains "an applicant for admission." Doc. 18 at 9.

Petitioner is an "applicant for admission" subject to mandatory detention under Section 1225(b)(2). "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[1] That definition encompasses Petitioner because he admits that he is present in the United States without ever having been legally admitted. *See* Doc. 1 at 9; Doc. 2 at 4. The passage of time without apprehension makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, the Petitioner's detention during removal proceedings is mandatory under Section 1225(b)(2).

---

[1] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2).

6

Petitioner makes two primary arguments to the contrary. First, borrowing from other statutory subsections and regulations, Petitioner claims that Section 1225(b)(2) does not apply to him because he is no longer an "arriving alien." Doc. 2 at 10. That argument fails because Section 1225(b)(2) does not use the phrase "arriving alien." Congress surely would have done so if it had intended Section 1225(b)(2) to apply only to arriving aliens, a point highlighted by Congress' use of that phrase elsewhere in Section 1225. *Buenrostro-Mendez*, 166 F.4th at 504.[2]

Second, Petitioner argues that to subject aliens who are present in the interior of the country without authorization to mandatory detention under Section 1225(b)(2)(A) would render superfluous Section 1226(c) and the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Doc. 2 at 11. Not so. Section "1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens"—specifically, by providing that those aliens shall be detained following release from an underlying offense. *Gomez v. Daley*, No. 2:25-CV-00150-SCM, 2026 WL 252496, at *6 (E.D. Ky. Jan. 30, 2026); *see also Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026) ("[T]he [Laken Riley Act] was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226."). Petitioner's anti-superfluity argument is thus baseless—but even if there were some superfluity that would not justify rewriting the plain text of Section 1225. *See Barton v. Barr*, 590 U.S. 222, 239 (2020).

---

[2] Moreover, Petitioner's reliance on regulations is misplaced because regulations cannot trump the language of a statute. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386–87 (2024).

## II.    Fifth Amendment Due Process

### A. Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

In his Petition, Petitioner claims that his detention without a bond hearing violates the Due Process Clause. Doc. 1 at 17–18. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

In arguing to the contrary in his Reply brief, Petitioner misplaces his reliance on *Leng May Ma v. Barber*, 357 U.S. 185 (1958), and *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Leng May Ma* addressed the treatment of a noncitizen under immigration *statutes*; the decision did not address the rights provided by the *constitution*, which is what Petitioner must invoke to overcome his lack of a statutory right to a bond hearing. *See* 357 U.S. at 187. And *Zadvydas v. Davis* held only that principles of constitutional avoidance counseled against interpreting a statute to allow indefinite

8

detention of an alien when the removal period had expired and there was no realistic possibility the alien would be deported. *See* 533 U.S. at 685–86, 689. *Zadvydas v. Davis* in no way suggests that the Constitution requires every noncitizen facing removal be given a bond hearing during the pendency of those removal proceedings, no matter how brief. *See Buenrostro-Mendez*, 166 F.4th at 508.

Neither the governing statutes nor the constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore can support neither the Petition nor the Motion.

> **B. Petitioner's Claim that detention without a filed Notice to Appear violates the Fifth Amendment's Due Process Clause is moot, unexhausted, and meritless.**

Petitioner also argues that his detention "for nearly three weeks for the putative purpose of removal proceedings, without any active ongoing removal proceedings, violates due process." Doc. 2 at 7. The record indicates that Petitioner had already been served with his Notice to Appear at the time he filed his Petition and Motion, so his argument apparently turns on the fact that the Notice to Appear had not been *filed* with the Immigration Court. But the Notice to Appear has now been filed, rendering this claim moot.

In arguing to the contrary, Petitioner suggests that the pre-filing detention "is not remedied" by the filing. Doc. 19 at 19. But Section 2241 relief looks to the current status of the petitioner's custody—whether it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). If the absence of a filed Notice to Appear rendered the confinement constitutionally suspect, that suspicion has now been dispelled by the filed Notice to Appear. Petitioner cites no support for the idea that the Court should nevertheless use a Section 2241 petition to release him as some sort of punishment or compensation for a procedural defect that has now been corrected—especially where, as here, the defect has not prejudiced his ability to

make his case in the already scheduled removal proceedings of which he was made aware before filing his petition. In the absence of any cited authority compelling it, the Court cannot conclude that the Constitution requires that extreme result.

Petitioner's Due Process claim is independently unreviewable due to his failure to exhaust his administrative remedies. Petitioner contends that the Sixth Circuit has held that due process challenges do not require exhaustion. Doc. 19 at 6 n.2. But the Sixth Circuit has held that an "alien must raise correctable procedural errors to the BIA." *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). And, here, Petitioner could have presented his claim based on the lack of a filed Notice to Appear to the administrative authorities, who could have corrected the defect. Indeed, they have now done so. And to the extent Petitioner argues that the earlier lack of a Notice to Appear continues to render his detention invalid even though a Notice to Appear has now been filed, that too is an issue that could have been addressed by the Immigration Judge or BIA—and that falls outside the *Matter of Yajure Hurtado* decision that renders exhaustion of Petitioner's other claims futile.

In an abundance of caution, the Court notes that Petitioner's argument relating to detention without a Notice to Appear is in any event meritless. Petitioner argues that the Due Process Clause permits civil detention only when it is justified by a legitimate purpose. But, as noted above, Section 1225 *requires* detention until it is determined whether the detained noncitizen is admissible or instead due to be removed. *See supra*, at 6. As noted above, those governing statutes establish all the process to which Petitioner was entitled by the Constitution. *See supra*, at 8. But even taking Petitioner's argument on its own terms, Petitioner's detention was tethered to the purpose of making a decision concerning removability, even if some of that detention occurred before the Notice to Appear that was served on him was ultimately filed. In any event, even if there is a

constitutional line concerning the length of time a noncitizen can be detained before removal proceedings are formally filed, Petitioner has cited no authority supporting the idea that only three weeks' detention would fall on the unconstitutional side of that line. No matter how it is viewed, this argument lacks merit.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 2) and Petition for Writ of Habeas Corpus (Doc. 1) are **DENIED**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 24th day of March, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

11